687 S.E.2d 62

**The STATE, Respondent,**

v.

**Gene Tony COOPER, Jr., Appellant.**

**No. 4633.**

Court of Appeals of South Carolina.

Heard Sept. 15, 2009.

Decided Nov. 19, 2009.

Rehearing Denied Jan. 20, 2010.

212

Deputy Chief Appellate Defender for Capital Appeals Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka and Senior Assistant Attorney General William Edgar Salter, III, of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

SHORT, J.

Gene Cooper appeals his convictions for murder, armed robbery, conspiracy to commit armed robbery, and kidnapping, arguing the trial court erred in: (1) denying Cooper's motion to dismiss the charges against him because his constitutional right to a speedy trial was violated; (2) finding Phillip Farmer was an unavailable witness and allowing Farmer's prior testimony to be read into the record because it denied Cooper his constitutional right to confrontation; and (3) ruling Cooper could be impeached with his 1977 convictions for housebreaking and grand larceny because the convictions were too remote and were highly prejudicial. We affirm.

## FACTS

Cooper was indicted in January 1990 for murder, kidnapping, armed robbery, forgery, and conspiracy. On February 22, 1991, he was convicted on all charges and sentenced to death. However, almost three years later, the South Carolina

Supreme Court reversed Cooper's conviction for murder and remanded the case for a new trial.[1] The Supreme Court affirmed Cooper's convictions for kidnapping, armed robbery, forgery, and conspiracy.[2] The following year, Cooper filed an application for Post Conviction Relief (PCR) pertaining to his four non-capital convictions. Counsel for both parties agreed that Cooper's retrial for murder should await the disposition of his PCR challenge. Following an evidentiary hearing, the PCR court granted Cooper relief for all of his non-capital convictions. The State appealed, and the South Carolina Supreme Court affirmed the granting of PCR.[3] The State did not petition for rehearing, and the Supreme Court sent the remittitur to the Lexington County Circuit Court on August 29, 2002.

Almost a year later, however, Cooper's retrial had still not been scheduled. On July 15, 2003, Cooper filed an amended demand for speedy trial, and a month later, a hearing was held in the circuit court before Judge Westbrook.[4] During the hearing, the State made a motion to disqualify Cooper's attorney, David Bruck, from the case for having contact with Cooper's co-defendant, Bo Southerland. Bruck asserted he had no prior knowledge of the State's motion to disqualify him from the case. Judge Westbrook took the matter under advisement, and set another hearing to discuss the speedy trial and disqualification issues. On August 25, 2003, the parties held an in-chambers conference to discuss the issues, and at that time, the deputy solicitor stated the solicitor's office would call Cooper's case for trial during spring 2004, between April and June.

The case was not called in spring 2004, and on February 10, 2005, Cooper filed a renewed demand for a speedy trial. Five days later, a hearing on the motion was held before Judge

---

1. *See State v. Cooper,* 312 S.C. 90, 439 S.E.2d 276 (1994).

2. Cooper remained incarcerated from his arrest in 1989 until his retrial in 2006.

3. *See Cooper v. Moore,* 351 S.C. 207, 569 S.E.2d 330 (2002).

4. Cooper's motion was titled "Defendant's Amended Demand for Speedy Trial," but the record does not contain a copy of an un-amended motion.

Keesley. Cooper moved to have the trial set for June or July 2005. The assistant solicitor said he could not set a date without Solicitor Donnie Myers being present, and the court should wait to set a date until a judge was selected for the case. On April 25, 2005, Judge Keesley ordered the case be heard before the end of 2005, or Cooper could move for bail or for dismissal of the charges. The order also provided notice was to be given to defense counsel of the trial date within thirty days of the order.

The following month, Solicitor Myers filed a motion to disqualify and recuse Cooper's attorneys. Myers stated that during Bruck's PCR representation of Cooper, Bruck contacted and communicated with Southerland, and obtained statements from him exculpating Cooper without approval from Southerland's attorneys. Myers asserted Bruck stipulated to the unauthorized communications; thus, Bruck and the other attorneys should be removed from the case and prohibited from talking with Cooper's newly-appointed attorneys.

Cooper filed a motion to dismiss all charges for lack of a speedy trial on June 1st. In the motion, Bruck stated that in response to Judge Keesley's April 25, 2005 Order, he sent an e-mail to the judge opposing counsel's request that the trial be set for the first of August because of a conflict with his schedule as a law professor at an out-of-state school.[5] On July 12, 2005, a hearing was held before Judge Keesley concerning Cooper's motion for speedy trial; the State's motion to excuse Cooper's counsel; and the Eleventh Circuit Solicitor's motion to withdraw from the case due to a conflict of interest. The solicitor's office moved to be excused because the deputy solicitor was a law clerk to the judge who presided over Cooper's first trial and was present for attorney-client issues.[6] The State also argued Bruck should be removed from the case because of his improper contact with Southerland. On July 13, 2005, Judge Keesley filed his order, (1) denying the State's motion to remove Cooper's counsel; (2) granting the State's motion to disqualify the Eleventh Circuit Solicitor's Office; (3)

---

5. Bruck also sent copies of the e-mail to opposing counsel.

6. The motion to have the solicitor's office removed was not made known to Cooper until a June 29, 2005 letter.

denying Cooper's motion to dismiss; and (4) denying Cooper's motion for bail.

In September 2005, the First Circuit Solicitor's Office was appointed to the case, and in December, Chief Justice Toal appointed Judge Pieper to hear the case. Shortly thereafter, on December 29, Cooper filed a renewed motion to dismiss all charges for lack of a speedy trial, or in the alternative for release on bail. Cooper re-asserted everything from his prior motions. Cooper also asserted that despite Judge Keesley's second order, the State appeared to have taken no action other than deliver the file to the Attorney General's Office and request assignment of a new solicitor. The State filed a response to Cooper's Motion, arguing this case was different from most speedy trial cases involving pre-indictment or pre-trial delay because the case had already been tried once. The State conceded the length of delay in this case triggered further analysis of the reasons the trial was delayed and whether Cooper was prejudiced; however, the State claimed the case was delayed for three years and four months, beginning from August 29, 2002, the date the Supreme Court sent down the remittitur. The State contended Cooper was not prejudiced by the delay because he had already been tried and convicted for the crimes. Cooper filed a reply to the State's response, asserting the State cited no authority for its position that Cooper's rights were diminished by his intervening conviction and appellate reversal, and Cooper argued it should have required less time for the State to retry the case. Cooper also claimed his many motions for speedy trial differentiated this case from other speedy trial cases and weighed heavily in granting his motion to dismiss.

On February 8, 2005, a hearing was held before Judge Pieper concerning the speedy trial issue. Judge Pieper issued his order on April 21, 2006, denying Cooper's motion. Cooper's second trial was held before Judge Pieper from May 22 to June 1, 2006. At the conclusion of the State's case and the conclusion of the presentation of evidence, Cooper made motions for directed verdict, which were denied. Cooper also renewed his motion to dismiss the indictments due to a speedy trial violation at the conclusion of all the evidence; however, Judge Pieper denied the motion. The jury convicted Cooper of each of the charged offenses. Judge Pieper sentenced

Cooper to life imprisonment for murder, twenty-five years for armed robbery, and five years for conspiracy to commit armed robbery. He did not impose a sentence for the kidnapping conviction. This appeal followed.

## STANDARD OF REVIEW

In a criminal case, the appellate court reviews errors of law only. *State v. Wilson,* 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). The court is bound by the findings of the trial court unless they are unsupported by the evidence, clearly wrong, or controlled by an error of law. *State v. Williams,* 326 S.C. 130, 135, 485 S.E.2d 99, 102 (1997). The reviewing "[c]ourt does not reevaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829.

## LAW/ANALYSIS

### I. Speedy Trial

■ Cooper argues the trial court erred in denying his motion to dismiss the charges against him because his constitutional right to a speedy trial was violated. We disagree.

■ A criminal defendant is guaranteed the right to a speedy trial. U.S. Const. amend. VI; S.C. Const. art. I, § 14; *State v. Pittman,* 373 S.C. 527, 548, 647 S.E.2d 144, 155 (2007). "This right 'is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.' " *Id. (quoting U.S. v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)). There is no universal test to determine whether a defendant's right to a speedy trial has been violated. *State v. Waites,* 270 S.C. 104, 107, 240 S.E.2d 651, 653 (1978).

A reviewing court should consider four factors when determining whether a defendant has been deprived of his or her right to a speedy trial: 1) length of the delay; 2) reason for the delay; 3) defendant's assertion of the right; and 4)

prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *see also State v. Brazell,* 325 S.C. 65, 75, 480 S.E.2d 64, 70 (1997). These four factors are related and must be considered together with any other relevant circumstances. *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. "Accordingly, the determination that a defendant has been deprived of this right is not based on the passage of a specific period of time, but instead is analyzed in terms of the circumstances of each case, balancing the conduct of the prosecution and the defense." *Pittman,* 373 S.C. at 549, 647 S.E.2d at 155. However, in *Doggett v. U.S.,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the United States Supreme Court suggested in dicta that a delay of more than a year is "presumptively prejudicial." Also, in *State v. Waites,* our supreme court found a two-year and four month delay was sufficient to trigger further review. *Waites,* 270 S.C. at 108, 240 S.E.2d at 653. Therefore, "a delay may be so lengthy as to require a finding of presumptive prejudice, and thus trigger the analysis of the other factors." *Pittman,* 373 S.C. at 549, 647 S.E.2d at 155.

Cooper argues the delay of forty-four months in bringing his case to trial the second time exceeded any delay in almost any reported South Carolina case, and the State's reason for the delay was both arbitrary and unreasonable. Cooper argues his many motions for speedy trial should be weighted heavily in favor of granting his motion to dismiss. He also asserts his incarceration on death row "amounted to no small prejudice" and his "anxiety and concern as he waited for the state to call his case also cannot be diminished." He further asserts that witnesses' memories were clearly affected by the delay at trial.

In his April 21, 2006 order denying Cooper's motions, Judge Pieper addressed each of the four *Barker* factors. As to the length of delay in bringing the case to trial, Judge Pieper noted that "a total delay of at least forty-four months [was] sufficient to trigger review of the other factors." [7] However, he found "the delay was to some degree the result of prosecutorial and governmental negligence, and partly justifiable."

---

7. We note the forty-four month delay in re-trying Cooper's case is troubling; however, in this case, we find it was justifiable.

He also stated that while none of the excuses alone were sufficient to justify the delay, when considered together, they sufficiently justified a majority of the delay. *See Waites,* 270 S.C. at 108, 240 S.E.2d at 653 (holding that the "constitutional guarantee of a speedy trial is protection only against delay which is arbitrary or unreasonable"). Specifically, Judge Pieper determined the main excuses for the delay were: (1) the complexity of the case and the amount of time required to prepare for trial; (2) the Eleventh Circuit Solicitor's Office's relocation due to mold contamination and an overcrowded docket; (3) confusion over which judge, if any, had been assigned to the case; and (4) the recusal of the Eleventh Circuit Solicitor's Office from the case in July 2005, preventing the First Circuit Solicitor's Office from being appointed until September 2005. Therefore, Judge Pieper concluded "the state's conduct in this instance was not apparently willful and was largely justifiable."

In considering Cooper's assertion of his right to a speedy trial, Judge Pieper noted that "[i]t cannot be argued that since 2003 the defendant ever failed to assert his right to a speedy trial" and "nothing in the procedural history of the case could support a finding that the defendant failed to properly assert his right to a speedy trial." In consideration of the fourth and most important factor, prejudice, Judge Pieper found the main prejudice Cooper suffered was pretrial incarceration.

After weighing the four *Barker* factors and "the lack of demonstrable evidence of trial prejudice," Judge Pieper determined the "presumption of prejudice has been persuasively rebutted"; therefore, he denied Cooper's motion. Further, Judge Pieper noted the State withdrew its notice to seek the death penalty; thus, the withdrawal could be construed as a benefit to Cooper resulting from the delay. *See Brazell,* 325 S.C. at 76, 480 S.E.2d at 70–71 (noting the three-year and five-month delay was negated by the lack of prejudice to the defense). Therefore, we find Judge Pieper's decision was supported by the evidence.

## II. Unavailable Witness

Cooper argues the trial court erred in finding Phillip Farmer was an unavailable witness and allowing Farmer's

prior testimony to be read into the record because it denied Cooper his constitutional right to confrontation. We disagree.

The confrontation clause of the Sixth Amendment of the Constitution of the United States is applicable to the States, and the primary interest secured by the confrontation clause is the right of cross-examination. *State v. Mizzell,* 349 S.C. 326, 330, 563 S.E.2d 315, 317 (2002); *Starnes v. State,* 307 S.C. 247, 249, 414 S.E.2d 582, 583 (1991). "The right to confrontation has been referred to as a 'trial right.'" *Starnes,* 307 S.C. at 249, 414 S.E.2d at 583 *(quoting Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). This trial right includes the opportunity to cross-examine and have a jury weigh the demeanor of the witness. *Barber,* 390 U.S. at 725, 88 S.Ct. 1318 (1968). Thus, "the appropriate question under the confrontation clause is whether there has been any interference with the defendant's opportunity for effective cross-examination at trial." *Starnes,* 307 S.C. at 250, 414 S.E.2d at 584.

"[T]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber,* 390 U.S. at 722, 88 S.Ct. 1318. "[A] witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."[8] *Id.* at 724–25, 88 S.Ct. 1318. Rule 804(a)(5), SCRE, provides that a witness may be declared "unavailable" if the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means."

---

8. In *Barber v. Page,* the United States Supreme Court found Barber's right to confrontation had been violated when "the State made absolutely no effort to obtain the presence of [the witness] at trial other than to ascertain that he was in a federal prison outside of Oklahoma." 390 U.S. at 723, 88 S.Ct. 1318. Further, the Court found the "sole reason why [the witness] was not present to testify in person was because the State did not attempt to seek his presence." *Id.* at 725. In contrast, here, the State attempted to have Farmer brought to South Carolina to testify, but was unable to do so due to circumstances beyond the State's control.

Cooper argues the State's efforts to procure Farmer's presence from Texas were unreasonable. Cooper also asserts the State knew it would be unable to obtain Farmer's presence at trial eleven days prior to the trial; however, the State did not make a motion for continuance, or even bring the problem to the court's attention. He argues the State's failure to have Farmer available to testify in person denied him his constitutional right to confrontation because Farmer is a pathological liar and it was imperative for the trial jury to observe his demeanor in person.[9]

The State asserted the Solicitor was unable to secure Farmer's presence from a Texas penitentiary through a normal out-of-state subpoena because South Carolina is not a signatory state to the Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act (the Act). At trial, the State submitted two affidavits in support of its motion to have Farmer declared an "unavailable" witness under Rule 804(a)(5): one from Senior Assistant Solicitor B. Harrison Bell, and one from James M. Frazier, III, an Assistant General Counsel for the Office of General Counsel for the Texas Department of Criminal Justice.

In his affidavit, Frazier testified that because South Carolina is not a signatory to the Act, the Texas Department of Criminal Justice would not honor a mere subpoena for Farmer to appear as a witness in South Carolina. Instead, Texas required an executive agreement between the governor of South Carolina and the governor of Texas. The prisoner witness must then have a hearing before a district judge who will decide whether the prisoner witness will be transported to the requesting state. Frazier also testified that Texas will not release a prisoner without a hearing and an order of transport from a district judge. He further testified there are only two

---

9. At trial, the State introduced Farmer's previous testimony that he called Cooper to initiate a conspiracy between himself and Cooper to rob the decedent. To impeach Farmer's previous testimony, Cooper introduced the testimony of Kimberly Turner, a Ph.D. student in clinical psychology who had interviewed Farmer in jail. In Farmer's new statement to Turner, he stated he had only heard from Cooper after the murder, and he was "completely surprised" by the phone call. Farmer told her that he had put a "spin" on his testimony in favor of the State at the first trial to make "Cooper look worse than he was." He said he wanted to "tell the truth this time."

judges in Texas who hold hearings for prisoner witness renditions to other states. He confirmed Bell made a request to have Farmer transported, and he submitted the appropriate paperwork to Texas, which was received on May 10, 2006. Frazier testified he contacted the court to set up a hearing; however, neither judge was available for the remainder of the month of May. He notified Bell of this on May 11, 2006. He said he had "no reason to believe the South Carolina authorities were aware of that unavailability before this week when I first informed them of such."

Judge Pieper reviewed the rendition request and noted it was initiated in April, but was delayed because a duplicate had not been submitted to the South Carolina Secretary of State. However, he reviewed the "pertinent procedures and statutory requirements" and did not see any requirement to submit a duplicate; thus, he did not attribute the delay to the prosecution. He found that both the South Carolina and Texas governors had signed the paperwork in early May; however, no Texas judge was available to hold the hearing as required by Texas law. Thus, Judge Pieper stated "it's difficult for me to say that the State acted unreasonably" when Texas did not have any judges available to hear the rendition request. Additionally, Judge Pieper noted that Farmer was under oath at the first trial and Cooper had engaged in "the full right of confrontation." Judge Pieper further noted that neither party had requested a continuance. Therefore, we find Judge Pieper's decision was supported by the evidence.

### III. Prior Crimes

■ Cooper argues the trial court erred in ruling Cooper could be impeached with his 1977 convictions for housebreaking and grand larceny because the convictions were too remote and were highly prejudicial. We disagree.

■ Rule 609(b) of the South Carolina Rules of Evidence provides:

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of

justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Rule 609(b), SCRE. "Rule 609(b) establishes a presumption against admissibility of remote convictions ... and the State bears the burden of establishing facts and circumstances sufficient to substantially overcome that presumption." *State v. Colf,* 337 S.C. 622, 626–27, 525 S.E.2d 246, 248 (2000). In determining whether the probative value of a prior conviction outweighs its prejudicial effect, the court should apply five factors: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Id.* at 627, 525 S.E.2d at 248.

Cooper was released from prison in 1988 for his 1977 convictions for armed robbery, housebreaking, and grand larceny.[10] Cooper was being retried for a murder that occurred in 1989. Cooper objected to the introduction of his prior crimes under Rule 609 because they were more than ten years old.

After considering the balancing test required by Rule 609(b), Judge Pieper did not allow Cooper's conviction for armed robbery to be used for impeachment because of its similarity to the armed robbery in this case. However, Judge Pieper did allow Cooper's convictions for housebreaking and larceny to be admitted for impeachment purposes because they are crimes of dishonesty that weigh on Cooper's credibility, and the probative value of the convictions outweighed their prejudicial effect. *See Colf,* 337 S.C. at 628, 525 S.E.2d at 249 ("The fact that larceny reflects on credibility and the importance of credibility to the jury's decision are both factors the

---

**10.** Cooper pleaded guilty to armed robbery, housebreaking, and grand larceny, and received a sentence of fifteen years. He was released from prison in 1988 for his 1977 convictions. Cooper was arrested for murder that occurred in 1989 and his retrial was in May 2006. Thus, although eighteen years had passed between his release for his prior convictions and his retrial for murder, Cooper's 1988 release for the prior crimes was very close in time to the October 1989 offenses for which he was being retried.

trial court should have weighed in making the admissibility determination."). Additionally, Cooper's attorney conceded the crimes of housebreaking and larceny were not so similar to the charge in this case to be prejudicial to Cooper. Furthermore, Judge Pieper gave a limiting charge to the jury explaining Cooper's convictions could only be considered for impeachment purposes. Therefore, we find Judge Pieper's decision was supported by the evidence.

## CONCLUSION

Accordingly, the trial court's order is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.