656 S.E.2d 403

**The STATE, Respondent,**

v.

**Lawrence Marcus TUCKER, Appellant.**

**No. 4335.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2007.
Decided Jan. 16, 2008.
Rehearing Denied Feb. 14, 2008.

414

Appellate Defender Katherine H. Hudgins, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor David Michael Pascoe, Jr., of Summerville, for Respondent.

THOMAS, J.

Lawrence Marcus Tucker appeals the entry of his guilty plea in which he waived his rights to appellate review and post-conviction relief. He argues his appearance in a South Carolina court violated the Interstate Agreement on Detainers

Act and his conviction should be vacated. We disagree. Tucker also argues the trial court erred in accepting his guilty plea in which he waived the right to file an action for post-conviction relief. We find this issue is not ripe for our review.

## FACTS AND PROCEDURAL HISTORY

Tucker was charged with two counts of assault with intent to kill and one count of assault and battery with intent to kill after an incident in Calhoun County on October 20, 2002. Following his May 13, 2003 Calhoun County Grand Jury indictments, Tucker was convicted in a federal court of the unauthorized use of a device while on bond and began serving his federal sentence.

In February 2006, Tucker was transferred from the Edgefield Federal Correctional Institution to Calhoun County to dispose of the three indictments against him. Although the State was prepared to proceed to trial, Tucker had never met with his attorney and thus moved for a continuance. The trial court granted his motion and Tucker was returned to federal custody.

On March 20, 2006, Tucker was again transferred into state custody to dispose of the three indictments. Before returning to Calhoun County, Tucker filed a motion to dismiss the indictments based on a violation of the Interstate Agreement on Detainers Act (IAD). Tucker argued solely under IAD Article IV(e), the "anti-shuttling" provision, that his three indictments should be dismissed. After hearing arguments from both sides, the trial court ruled that the purpose of the IAD, the timely disposition of charges, was not accomplished upon Tucker's February visit and as such the anti-shuttling provision of the IAD did not apply to Tucker.

After the trial court denied his motion to dismiss, Tucker entered into negotiations with the solicitor. Tucker subsequently pled guilty in return for a recommended sentence of seven years. Included in the plea agreement were a waiver of Tucker's right to file an appeal on his IAD motion and a waiver of his right to file for post conviction relief (PCR). Tucker waived both of these rights several times during the trial court's plea colloquy. Tucker now appeals his conviction and seeks to vacate his plea on the two rights he waived in the

plea agreement, namely, an appeal regarding the IAD motion and an appeal of his waiver of the right to file a PCR.

## LAW/ANALYSIS

### I. Interstate Agreement on Detainers

Tucker asserts Article IV(e) of the IAD was violated and the trial court erred by not dismissing the charges against him in light of the IAD violation. We find Tucker waived any such IAD violation by entering a guilty plea and expressly waived the right to appeal any such violation under the terms of his guilty plea.

■ The IAD is an interstate compact by which the states, the District of Columbia, and the Federal Government have established uniform procedures for the transfer of prisoners serving sentences in one state to another state [1] for the disposition of pending charges. South Carolina enacted the IAD into law in 1962. S.C.Code Ann. § 17–11–10 (2006).

In *State v. Adams*, 354 S.C. 361, 580 S.E.2d 785 (Ct.App. 2003), this court found that a violation of the IAD does not deprive a court of subject matter jurisdiction. Numerous courts have held the rights created by the IAD are statutory in nature and do not rise to the level of constitutionally guaranteed rights. *Pethel v. McBride*, 219 W.Va. 578, 638 S.E.2d 727 (2006); *U.S. v. Black*, 609 F.2d 1330 (9th Cir.1979), certiorari denied 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 ("the protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction"); *Camp v. U.S.*, 587 F.2d 397, 400 (8th Cir.1978) (holding the IAD is a statutory set of rules and does not amount to constitutionally guaranteed rights); *Diggs v. Owens*, 833 F.2d 439, 442 (3rd Cir.1987) (holding the IAD is a set of procedural rules, the violation of which does not infringe a constitutional right); *Reed v. Clark*, 984 F.2d

---

1. Article II(a) of the IAD explains, " 'State' shall mean a State of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico."

209, 210 (7th Cir.1993) (holding IAD procedures are not constitutional rights). The United States Court of Appeals for the Third Circuit has held the IAD "constitutes nothing more than a set of procedural rules." *U.S. v. Palmer,* 574 F.2d 164, 167 (3rd Cir.1978). The statutory right to dismissal due to an administrative violation of these rules is therefore not " 'fundamental,' even though its impact on a defendant may be great." *Id.* (citing *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)).

Tucker contends Article IV(e)[2] of the IAD was violated when he was transferred to South Carolina custody in March 2006 for disposition of the same charges he faced during a February 2006 appearance in a South Carolina court. In the interim, Tucker was returned to Edgefield Federal Correctional Institution, his "original place of imprisonment" under the terms of the IAD. S.C.Code Ann. § 17–11–10, Art. IV(e) (2006). Tucker argues under *Alabama v. Bozeman,* 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001), the United States Supreme Court held "*every* prisoner arrival in the receiving State, whether followed by a very brief stay or a very long stay in the receiving State, triggers IV(e)'s 'no return' requirement," and thus Tucker's return to South Carolina custody was in violation of the IAD. 533 U.S. at 154, 121 S.Ct. 2079 (emphasis in original).

■ The case *sub judice* is distinguished from *Bozeman* by the fact that Tucker proceeded to enter a guilty plea following the denial of his motion to dismiss. Guilty pleas "generally act as a waiver[3] of all non-jurisdictional defects and defenses." *State v. Thomason,* 341 S.C. 524, 526, 534 S.E.2d 708, 710 (Ct.App.2000) (citing *State v. Munsch,* 287 S.C. 313, 338

---

**2.** If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. S.C.Code Ann. § 17–11–10, Art. IV(e) (2006).

**3.** Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Tucker knew of his right to appeal since moments before he proposed his guilty plea Tucker asked, "[w]hat's the process as far as appealing the [IAD] motion?"

S.E.2d 329 (1985)). In *United States v. Broce Construction Co., Inc.*, the Supreme Court discussed guilty pleas and their implications as follows:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence.[4]

488 U.S. 563, 565, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

In *United States v. Palmer*, the Court of Appeals for the Third Circuit addressed the question we do now, namely, whether a defendant may complain about violations of Article IV(e) of the IAD after pleading guilty without reservation. 574 F.2d 164 (3rd Cir.1978). That court noted that "although [defendant] moved to dismiss the indictment before sentencing, he was not willing to surrender [the] benefits [of pleading guilty] by seeking to withdraw his plea and 'take his chances' on the outcome of his IAD motion." *Palmer*, 574 F.2d at 166.

■ We hold that by proceeding with his guilty plea, Tucker waived any and all defects regarding his return to state custody under the IAD. In addition to implicitly waiving any violation of the IAD by entering a guilty plea, we also find that Tucker expressly waived his right to appeal the trial court's ruling on his IAD motion under the terms of his guilty plea.

When the trial court asked Tucker if he would like to enter a guilty plea or proceed to trial, Tucker hesitated, conferred with counsel, and then proposed a guilty plea in which he would "waive his right to appeal that motion, and would plea

---

4. Besides the precedent of *Adams* wherein this court found a violation of the IAD does not deprive a court of subject matter jurisdiction, Tucker's appeal did not present an argument regarding the trial court's power to accept his plea or impose a sentence. "Ordinarily, no point will be considered which is not set forth in the statement of issues on appeal." Rule 208(b)(1)(B), SCACR.

in exchange for a seven year sentence."[5] After the State agreed to Tucker's plea offer, the trial court reviewed the plea agreement during the plea colloquy:

In that agreement the state has agreed to recommend a sentence in this case of seven years in exchange for you waiving your right to file any appeal on the motion, and you are also waiving your right to file any post conviction relief. In other words, you would not be allowed to appeal, or you would accept the decision made ... by the court earlier today in regards to the Interstate Detainers Act.

"It is the prerogative of any person to waive his rights, confess, and plead guilty, under judicially defined safeguards, which are adequately enforced." *Reed v. Becka*, 333 S.C. 676, 685, 511 S.E.2d 396, 401 (Ct.App.1999) (quoting *State v. Armstrong*, 263 S.C. 594, 597, 211 S.E.2d 889, 890 (1975)). The United States Court of Appeals for the Fourth Circuit has held that a defendant may waive the right to appeal if that waiver is knowing and intelligent. *U.S. v. Blick*, 408 F.3d 162, 169 (4th Cir.2005).

 A guilty plea must also be knowingly and intelligently entered into in order to be valid. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To knowingly and voluntarily enter a guilty plea a defendant must have a full understanding of the charges against them and the consequences of the plea. *State v. Rikard*, 371 S.C. 295, 300, 638 S.E.2d 72, 75 (Ct.App.2006). An appellate court will review the totality of the circumstances to discern if a plea was entered into knowingly and intelligently. *Hughey v. State*, 255 S.C. 155, 157–58, 177 S.E.2d 553, 555 (1970).

 At the time of the guilty plea Tucker told the trial court he was thirty-four years old, not under the influence of alcohol or drugs, and not coerced or promised anything in return for his plea. Tucker also showed a high level of savvy regarding the criminal justice system by presenting and arguing his motion to dismiss on the IAD although his attorneys were present. The trial court questioned Tucker's understanding of the seven year sentence under his plea agreement instead of the fifteen year sentence in the state's original plea

---

5. The state originally offered a plea agreement of fifteen years.

offer or the twenty year sentence he faced if convicted at trial. Tucker answered that he agreed to accept the seven years proposed in his plea agreement. We find further proof that Tucker knowingly and intelligently entered into this guilty plea expressly waiving his right to appeal his IAD motion since Tucker is the one who conceived of and proposed this plea agreement.

## II. Post–Conviction Relief

■ Tucker asserts the trial court erred by accepting a plea agreement made unreasonable by a waiver of future post-conviction claims in addition to a waiver of the right to appeal. This issue is not ripe for our review.

Tucker's assertion presents the novel issue of whether a criminal defendant can waive his ability to file for post-conviction relief (PCR) in a guilty plea where the right to file an appeal is also waived. The South Carolina Supreme Court has held PCRs can be waived but the court has only addressed such a waiver in capital cases after a prisoner has filed a PCR application. *Hughes v. State*, 367 S.C. 389, 395, 626 S.E.2d 805, 808 (2006) ("The Court will issue an execution notice after that person either has exhausted all appeals and other avenues of post-conviction relief in state and federal courts, or after that person, who is determined by this Court to be mentally competent, knowingly and voluntarily waives such appeals."); *State v. Downs*, 369 S.C. 55, 631 S.E.2d 79 (2006) (holding appellant is competent to waive his appeals and be executed as his decision to waive those appeals is knowing and voluntary). In *Downs* the supreme court allowed a prisoner to waive his PCR upon the finding he was competent to do so. This issue was presented to the supreme court after Downs had been convicted, sentenced, and filed a PCR application.

■ While we are mindful of the supreme court's rulings in capital cases such as *Downs*, those matters are distinguishable from the present case by the fact that specific PCR applications, not the prospective ability to file a PCR, were waived. In the matter *sub judice* we find the issue of Tucker's waiver of his right to file a prospective PCR application is beyond the purview of this court as an error correcting authority. See *State v. Elmore*, 368 S.C. 230, 238, 628 S.E.2d 271, 275

(Ct.App.2006) (recognizing the supreme court as the arbiter of legal policy).

The Uniform Post Conviction Procedure Act provides a procedural framework for collaterally attacking convictions and sentences. *Al–Shabazz v. State,* 338 S.C. 354, 366, 527 S.E.2d 742, 748 (2000); S.C.Code Ann. § 17–27–20 (2006). Tucker has not sought post-conviction relief yet. The state has conceded that if and when Tucker should attempt to file a PCR application, Tucker could raise the issue of whether his plea agreement was made unreasonable by a waiver of post-conviction claims. Since Tucker has yet to file for post-conviction relief, we find the current issue is not ripe for our review and we therefore decline to address it.

## CONCLUSION

Based on the foregoing, the order of the trial court is hereby

**AFFIRMED.**

HEARN, C.J., and KITTREDGE, J., concur.