# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Steven Louis Barnes, Appellant.

Appellate Case No. 2017-002140

———————————

Appeal From Edgefield County
Diane Schafer Goodstein, Circuit Court Judge

———————————

Opinion No. 5749
Heard May 5, 2020 – Filed July 22, 2020

———————————

## AFFIRMED

———————————

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Mark Reynolds Farthing, both of
Columbia; and Solicitor Samuel R. Hubbard, III, of
Lexington, for Respondent.

———————————

**GEATHERS, J.:**  This appeal is the latest in the eighteen-year narrative of Steven
Louis Barnes.  Barnes appeals his conviction of murder for which he was sentenced
to life imprisonment without the possibility of parole.  Barnes argues the circuit court
erred in refusing to dismiss his indictment because (1) the State violated his state
and federal rights to a speedy trial and (2) the State did not comply with the Interstate

Agreement on Detainers Act (the "IAD"), S.C. Code Ann. §§ 17-11-10 to -80 (2014).[1]  We affirm.

## FACTS

In January 2002, Barnes was arrested following a multi-state investigation into a series of events that began in Georgia and ended with the execution-style killing of a sixteen-year-old young man in Edgefield, South Carolina.[2]  Following Barnes's arrest in Georgia, a South Carolina arrest warrant was issued on January 25, 2002, and the Governor of South Carolina requested Barnes's extradition on February 27, 2002.  On April 17, 2002, a hearing was held in Georgia and Barnes waived extradition.  A few days later, a formal order was issued authorizing Barnes's extradition to South Carolina, but he remained in Georgia to stand trial for unrelated charges of armed robbery, kidnapping, burglary, terroristic threats, and pandering prostitution.  In December of 2003, Barnes was convicted of his Georgia charges and sentenced to an aggregate term of life imprisonment.  In January 2004, Barnes was transferred to the Georgia Department of Corrections.

Thereafter, the Edgefield County Solicitor received a document postmarked on February 12, 2005, requesting the final disposition of Barnes's pending charges

---

[1] *See* § 17-11-10, Art. I ("[T]he purpose of this agreement [is] to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."); *State v. Hill*, 409 S.C. 50, 58, 760 S.E.2d 802, 807 (2014) ("The central purpose of the IAD is to allow participating states to uniformly and expeditiously dispose of charges pending against prisoners held out of state."); *State v. Patterson*, 273 S.C. 361, 363, 256 S.E.2d 417, 418 (1979) ("The goal of promoting prisoner rehabilitation is achieved by requiring the receiving state to proceed to trial within 180 days.").

[2] Because Barnes challenges his conviction on speedy trial and IAD grounds, we focus only on the procedural timeline of his prosecution.  However, our supreme court explored the underlying facts of the case in Barnes's first appeal.  *See State v. Barnes*, 407 S.C. 27, 753 S.E.2d 545 (2014) (hereinafter *Barnes I*).  Additionally, the supreme court discussed the underlying facts in an appeal involving one of Barnes's co-defendants, Alexander Hunsberger.  *See State v. Hunsberger*, 418 S.C. 335, 794 S.E.2d 368 (2016).

pursuant to the IAD.[3]  The solicitor then arranged for Barnes to be brought to South Carolina, and Barnes was extradited on May 18, 2005.  After Barnes's extradition, his case proceeded under the following timeline:

- May 25, 2005 – In response to his IAD filing, a hearing was held before the Honorable William P. Keesley; at the hearing, the State discussed its intent to seek the death penalty.
- May 27, 2005 – Judge Keesley issued an order acknowledging the case would likely be tried as a capital case and finding good cause to continue Barnes's trial beyond the deadlines established by the IAD.
- June 6, 2005 – O. Lee Sturkey appointed to represent Barnes.
- August 10, 2005 – The Edgefield County Grand Jury formally indicted Barnes for kidnapping.
- September 1, 2005 – Robert Harte appointed as lead counsel for Barnes, replacing O. Lee Sturkey.
- September 8, 2005 – Barnes filed a motion to represent himself; Barnes also attempted to renew his IAD objection in a written *pro se* motion filed with the Edgefield County Clerk of Court and served on the State.
- September 14, 2005 – Barnes filed a letter with the Edgefield County Clerk of Court requesting that his attorney move for a speedy trial and dismissal pursuant to the IAD.
- October 31, 2005 – The South Carolina Supreme Court issued an order vesting the Honorable J. Cordell Maddox, Jr. with exclusive jurisdiction over the case.
- November 16, 2005 – Barnes filed a letter with the Edgefield County Clerk of Court requesting that his attorney oppose any continuance motions.
- December 6, 2005 – The Edgefield County Grand Jury formally indicted Barnes for murder.
- December 13, 2005 – Barnes served with the State's notice of intent to seek the death penalty.
- February 8, 2006 – David Tarr appointed as co-counsel for Barnes.
- May 16, 2006 – The circuit court held a hearing and scheduled Barnes's trial for January–February 2007.
- April 17, 2008 – The circuit court issued an order setting Barnes's capital trial for June 2008.

---

[3] Pursuant to section 17-11-10, Art. III(b), Barnes submitted his request for final disposition to the warden of the prison in Georgia where he was incarcerated.  The warden then forwarded the request to the Edgefield County Solicitor.

- May 13, 2008 – The circuit court issued an order continuing the case from the June 2008 term upon Barnes's request for a continuance.
- January 25, 2010 – The supreme court issued an order vesting the Honorable R. Knox McMahon with exclusive jurisdiction over the case.

Barnes's trial was conducted on November 8–13, 2010. Following the trial, Barnes was convicted of murder and kidnapping and sentenced to death. Barnes appealed, and our supreme court reversed the convictions on October 16, 2013. On January 15, 2014, the supreme court withdrew its opinion and issued a substituted opinion reversing Barnes's convictions solely on the ground that he was improperly denied the right to self-representation. *See Barnes I*, 407 S.C. at 37, 753 S.E.2d at 550. Additionally, the supreme court expressly addressed Barnes's IAD claim, holding Barnes waived his rights under the Act. *See Barnes I*, 407 S.C. at 37, 753 S.E.2d at 551. Barnes's case was remitted to the circuit court on January 31, 2014.

On June 9, 2014, the Honorable Diane S. Goodstein was vested with exclusive jurisdiction of the case for retrial. Thereafter, the circuit court appointed Jeffrey P. Bloom and William S. McGuire to represent Barnes, and the State moved to have Barnes's convictions reinstated, arguing Barnes conceded that his convictions were constitutionally obtained by requesting counsel. When the motion was denied, the State filed a common law petition for writ of certiorari in the supreme court's original jurisdiction.[4] On July 1, 2015, the supreme court issued an opinion affirming the denial of the State's motion to reinstate Barnes's convictions. *See State v. Barnes*, 413 S.C. 1, 774 S.E.2d 454 (2015) (hereinafter *Barnes II*). The State filed a petition

---

[4] *See City of Columbia v. S.C. Pub. Serv. Comm'n*, 242 S.C. 528, 534, 131 S.E.2d 705, 708 (1963) ("At common law the writ of certiorari is used for two purposes: (1) As an appellate proceeding for the re-examination of some action of an inferior tribunal. (2) As an auxiliary process to enable the [c]ourt to obtain further information with respect to some matter already before it for adjudication." (citation omitted)); *id*. ("[T]o the extent that the subject matter of the proceeding brought before the appellate court will not be reinvestigated, tried, or determined on the merits as on appeal or writ of error, it is an original proceeding." (citation omitted)); *cf. State v. Isaac*, 405 S.C. 177, 189 n.8, 747 S.E.2d 677, 683 n.8 (2013) (Pleicones, J., concurring) (explaining that because a pretrial order denying a criminal defendant immunity under the Protection of Persons and Property Act is not immediately appealable, "an individual in that position may []seek relief by filing a common law petition for writ of certiorari in th[e supreme c]ourt's original jurisdiction").

for rehearing on July 14, 2015, and the supreme court denied the petition on August 6, 2015. The case was remitted to the circuit court on August 10, 2015.

During the pendency of the State's petition for rehearing, the supreme court placed one of Barnes's attorneys, William McGuire, under an order of protection from July 2015 until December 2016 due to his involvement in a high profile criminal trial. On July 7, 2017, the circuit court held a status conference in which the State withdrew its notice of intent to seek the death penalty and served Barnes with its intention to seek life without the possibility of parole. Additionally, the court set the trial date for October 9, 2017. Thereafter, on August 14, 2017, Barnes filed motions to dismiss, alleging violations of his speedy trial rights under the IAD and the state and federal constitutions.

On October 4, 2017, the Edgefield County Grand Jury reindicted Barnes for murder. Barnes's second trial was conducted on October 9–13, 2017. Prior to the start of trial, the circuit court ruled on several pre-trial motions, including Barnes's motions to dismiss for violations of his speedy trial rights under the IAD[5] and the state and federal constitutions.

First, the circuit court addressed Barnes's IAD claim. Barnes conceded that the supreme court disposed of this issue in *Barnes I* but argued that the circuit court should rule on the issue because all of the documents relevant to Barnes's claim were not included in the record on appeal presented to the supreme court. The State argued the circuit court was precluded from ruling on Barnes's IAD motion because the supreme court had already disposed of the issue, thus making its ruling the law of the case. Ultimately, the circuit court denied Barnes's motion to dismiss the indictment under the IAD, finding the supreme court fully disposed of the issue in *Barnes I*. Additionally, the circuit court noted that no new IAD detainer action had been commenced following *Barnes I*.

Turning to the speedy trial claim, the circuit court was presented with the question of whether the period of delay for its speedy trial analysis began at the time Barnes's first arrest warrant was issued in 2002 or at the time the supreme court remitted the case to the circuit court in 2014 following *Barnes I*. In analyzing this question, the circuit court noted "that the assertion of speedy trial rights after a conviction has been entered and then overturned on appeal is a novel legal issue in South Carolina." Barnes argued that the applicable period of delay began upon the

---

[5] *See* § 17-11-10, Art. III(a) (requiring that a defendant incarcerated in another state be brought to trial in the prosecuting state within 180 days of the defendant's request for a final disposition).

issuance of his arrest warrant in 2002 because despite failing to formally invoke his speedy trial rights, his IAD motion and *pro se* filings in his original trial constituted invocations of his speedy trial rights. Based on the fifteen-year time period between the issuance of the warrant and his retrial, Barnes argued that the State was responsible for an eight-year and seven-month delay.

The State argued that the period of delay should begin upon the date of remittitur in 2014 because Barnes waived his speedy trial rights in the first trial. The State noted that Barnes failed to preserve the issue for appeal in *Barnes I* by not raising it to the circuit court.[6] When asked whether the speedy trial claim from the first trial was preserved, Barnes's counsel responded, "I don't have any response to that because the record is what it is. It did not get argued to the trial court, it did not get raised again, and quite obviously it did not get raised on appeal []in the 2010 case."

The circuit court found that the proper period of delay to consider in Barnes's speedy trial analysis began on January 31, 2014, the date the case was remitted to the circuit court. The circuit court determined the remittitur represented the supreme court's final disposition of the issues in *Barnes I*, including the issue of Barnes's speedy trial rights which could have been ruled on by the supreme court had Barnes preserved the issue for appellate review and raised it before the supreme court.

Turning to Barnes's retrial, the court found that "[d]elay on its face from January 31, 2014, to October the 9th, 2017, is slightly more than three years and seven months," which was sufficient to trigger the speedy trial analysis. The circuit court then found two years and three months of the delay attributable to the State and sixteen months attributable to Barnes, but determined the delays weighed minimally against the State. Next, the court determined Barnes first raised his rights to a speedy trial on August 14, 2017. Finally, the circuit court found that Barnes did not suffer actual prejudice from the delay. Thus, the circuit court determined that based on the totality of the circumstances, Barnes's rights to a speedy trial were not violated. Furthermore, having acknowledged that the applicable period of delay for the speedy trial analysis was an unsettled question, the circuit court engaged in an alternative analysis in which it considered the delays between January 25, 2002, and January 31, 2014. The circuit court similarly determined that Barnes's rights to a speedy trial were not violated during this period of delay. Accordingly, the circuit

---

[6] The State further argued that Barnes's IAD motions were not equivalent to constitutional speedy trial motions and that Barnes's *pro se* filings were precluded by South Carolina's rule against hybrid representation.

court denied Barnes's motion to dismiss the indictment under the speedy trial clauses of the state and federal constitutions.

At the conclusion of the trial, Barnes was found guilty of murder and sentenced to life in prison without the possibility of parole.  This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in refusing to dismiss Barnes's indictment due to violations of his rights to a speedy trial?

2. Did the circuit court err in refusing to dismiss Barnes's indictment under the IAD?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wharton*, 381 S.C. 209, 213, 672 S.E.2d 786, 788 (2009).  Therefore, "[appellate courts are] bound by the [circuit] court's factual findings unless they are clearly erroneous." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

Speedy trial

"The trial court's ruling on a motion for speedy trial is reviewed under an abuse of discretion standard." *Hunsberger*, 418 S.C. at 342, 794 S.E.2d at 371.  "An abuse of discretion occurs when the court's decision is based on an error of law or upon factual findings that are without evidentiary support." *Id*. at 342, 794 S.E.2d at 371–72.

Interstate Agreement on Detainers Act

"[An appellate court] will reverse a circuit court's decision to grant a continuance under the IAD only when it amounts to an abuse of discretion." *Hill*, 409 S.C. at 59, 760 S.E.2d at 807.  Our courts have indicated that a circuit court's failure to comply with the mandatory language of the IAD is an error of law. *See Patterson*, 273 S.C. at 363–64, 256 S.E.2d at 418 (finding that a court commits reversible error when failing to comply with the mandatory language of the IAD); *see also State v. Holbrook*, 274 S.C. 4, 6, 260 S.E.2d 181, 182 (1979) ("[T]he []time limitation imposed under [the IAD] is mandatory . . . .").

Novel issue of law

"When addressing [a] novel question of law, the appellate court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of this state and the court's sense of law, justice, and right." *State v. Sweat*, 379 S.C. 367, 373, 665 S.E.2d 645, 649 (Ct. App. 2008), *modified on other grounds*, 386 S.C. 339, 356, 688 S.E.2d 569, 578 (2010).

## LAW/ANALYSIS

### I.  Speedy Trial

Barnes argues the circuit court erred in failing to dismiss his indictment because the State violated his rights to a speedy trial.  The State argues the circuit court properly found that Barnes's speedy trial rights were not violated.  We agree with the State.

Pursuant to the constitutions of the United States and South Carolina, an accused "shall enjoy the right to a speedy and public trial[] by an impartial jury." U.S. Const. amend. VI; S.C. Const. art. I, § 14.  "A speedy trial means a trial without unreasonable and unnecessary delay."  *Hunsberger*, 418 S.C. at 342, 794 S.E.2d at 371. "Accordingly, '[t]he right to a speedy trial is necessarily relative.  It is consistent with delays and depends upon circumstances.'"  *State v. Langford*, 400 S.C. 421, 441, 735 S.E.2d 471, 481 (2012) (quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)).  "Stated differently, '[a] speedy trial does not mean an immediate one; it does not imply undue haste, for the [S]tate, too, is entitled to a reasonable time in which to prepare its case; it simply means a trial without unreasonable and unnecessary delay.'"  *Id*. at 441, 735 S.E.2d at 481–82 (quoting *Wheeler v. State*, 247 S.C. 393, 400, 147 S.E.2d 627, 630 (1966)).  Therefore, "the determination that a defendant has been deprived of this right is not based on the passage of a specific period of time, but instead is analyzed in terms of the circumstances of each case, balancing the conduct of the prosecution and the defense."  *State v. Pittman*, 373 S.C. 527, 549, 647 S.E.2d 144, 155 (2007).

In *Barker v. Wingo*, the U.S. Supreme Court laid out a four-factor test for determining whether a defendant's speedy trial rights have been violated.  407 U.S. 514, 530–31 (1972).  "These factors are: (1) length of delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) whether the delay prejudiced the accused."  *Hunsberger*, 418 S.C. at 343, 794 S.E.2d at 372.  In applying the *Barker* Test, the U.S. Supreme Court noted:

[N]one of the four factors [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533. If a defendant demonstrates that his speedy trial rights have been violated, the proper remedy is dismissal of the charges. *Hunsberger*, 418 S.C. at 342, 794 S.E.2d at 371.

## A. Period of delay for analysis

Barnes argues the circuit court erred in failing to consider the period of delay associated with his first trial in its speedy trial analysis. Barnes asserts the appropriate period of delay for the court's speedy trial analysis began on January 25, 2002, the date his South Carolina arrest warrant was issued. The State argues the circuit court properly determined that the appropriate period of delay for its speedy trial analysis began on January 31, 2014, the date the case was remitted to the circuit court following *Barnes I*. We agree with the State.

Generally, "[a]n accused's speedy trial right begins when he is 'indicted, arrested, or otherwise officially accused.'" *Hunsberger*, 418 S.C. at 342, 794 S.E.2d at 372 (quoting *Langford*, 400 S.C. at 442, 735 S.E.2d at 482). However, after conducting our own research, we agree with the circuit court's conclusion that the date on which a defendant's speedy trial rights attach in a retrial following the reversal of a conviction on direct appeal is a novel question of law in South Carolina. Accordingly, this court is free to decide this issue with no particular deference to the conclusions of the circuit court. *See Sweat*, 379 S.C. at 373, 665 S.E.2d at 649 ("When addressing [a] novel question of law, the appellate court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of this state and the court's sense of law, justice, and right.").

We find two rationales in support of the circuit court's conclusion that Barnes's speedy trial rights attached in his retrial on January 31, 2014, the date of remittitur. First, Barnes waived his speedy trial rights in the previous case by failing to raise the issue to the circuit court or the supreme court. *See Bonnette v. State*, 277 S.C. 17, 18, 282 S.E.2d 597, 598 (1981) ("Waiver is an intentional relinquishment of a known right and may be implied from circumstances indicating an intent to waive.").

Barnes's argument that the circuit court erred in not considering the entire period between 2002 and 2017 ignores one crucial fact: Barnes received a trial in November 2010. *See Hunsberger*, 418 S.C. at 342–43, 794 S.E.2d at 372 (indicating the speedy trial analysis focuses on the *interval between an official accusation and the trial*). Further, Barnes conceded that he never filed a motion or otherwise challenged the eight-year period between the issuance of his arrest warrant and his trial while before the circuit court or the supreme court.[7] Thus, we conclude that Barnes's failure to challenge the period of delay in his previous trial while before the circuit court or the supreme court constitutes a waiver of his right to challenge the delay as unreasonable. *See Bonnette*, 277 S.C. at 18, 282 S.E.2d at 598 ("Acts inconsistent with the continued assertion of a right, *such as a failure to insist upon the right*, may constitute waiver." (emphasis added)). Accordingly, we find that a defendant should not be permitted to waive an alleged violation of his speedy trial rights while before the supreme court only to load the deck with the alleged violation in his subsequent retrial. *Cf. Wheeler*, 247 S.C. at 402–03, 147 S.E.2d at 631 (finding the circuit court's rejection of the defendant's contention that he had been denied his speedy trial rights could not be reviewed in post-conviction relief proceedings when the defendant failed to challenge the ruling on appeal); *State v. Cooper*, 386 S.C. 210, 212–18, 687 S.E.2d 62, 64–67 (Ct. App. 2009) (measuring the period of delay in the appellant's retrial from the date of remittitur after the supreme court affirmed the grant of post-conviction relief to the appellant).

Second, after conducting a survey of other jurisdictions that have addressed this issue, we find that courts generally measure the period of delay from the date the case was remitted from the appellate courts when conducting a speedy trial analysis in a retrial following the reversal of a defendant's conviction. *See Duplantis v. State*, 708 So. 2d 1327, 1334 (Miss. 1998) ("[T]he speedy trial clock begins to run

---

[7] The circuit court properly determined that Barnes's IAD motions in the first trial did not constitute assertions of his constitutional rights to a speedy trial. *See State v. Tucker*, 376 S.C. 412, 416, 656 S.E.2d 403, 405 (Ct. App. 2008) ("Numerous courts have held the rights created by the IAD are statutory in nature and do not rise to the level of constitutionally guaranteed rights."); *see also State v. Allen*, 269 S.C. 233, 236–39, 237 S.E.2d 64, 66–67 (1977) (analyzing an IAD claim separately and distinctly from a speedy trial claim). Similarly, the circuit court properly found that any assertion of the right in Barnes's *pro se* filings was invalid because Barnes was represented by counsel. *See State v. Stuckey*, 333 S.C. 56, 58, 508 S.E.2d 564, 564–65 (1998) ("Here, appellant, who is represented by counsel, attempted to file a substantive document relating to his case. Since this document was not submitted through counsel, it is not appropriate for consideration by this [c]ourt.").

for purposes of determining a violation of a defendant's right to speedy retrial on the date this Court reverses his first conviction."); *State v. Stewart*, 881 P.2d 629, 632 (Mont. 1994) ("In the case of retrials, it is the time of the filing of the remittitur which is controlling in determining a defendant's speedy trial rights."); *State v. Kula*, 579 N.W.2d 541, 547 (Neb. 1998) ("[T]he period between the petitioner's arrest and his first conviction should not be counted against the state in examining the delay incident to the petitioner's second trial, unless the trial error that necessitated the second trial occurred for the purpose of delay." (quoting *Pelletier v. Warden*, 627 A.2d 1363, 1371 (Conn. App. Ct. 1993)); *People v. Malone*, 237 Cal. Rptr. 794, 796 (Cal. Ct. App. 1987) (indicating the period of delay for speedy trial analysis under California's speedy trial statute starts with the date of remittitur); *Levin v. State*, 816 S.E.2d 170, 177 (Ga. Ct. App. 2018) ("Where, as here, there has been an appeal or a dismissal of the charges and a subsequent re-indictment, the court measures the delay from the filing of the remittitur in the trial court."); *Icgoren v. State*, 653 A.2d 972, 978 (Md. Ct. Spec. App. 1995) ("[I]n construing a party's right to a speedy trial under the Sixth Amendment of the Federal Constitution . . . , we are *generally*, absent extraordinary circumstances . . . , only concerned with the period between the receipt of an appellate mandate, if the next prior conviction is reversed, and the subsequent retrial, or the period between the declaration of a mistrial and the commencement of the retrial."); *see also Brewington v. State*, 705 S.E.2d 660, 662 (Ga. 2011) ("While typically the time for speedy trial attaches at the date of arrest (or date of indictment/accusation if earlier), in this case appellants Brewington and Gary Brown were actually tried. Although they moved for dismissal on speedy trial grounds prior to their November 2009 trial, they did not appeal the denial of that motion prior to being tried. Therefore, as to these two defendants, the relevant time frame for purposes of the instant motion to dismiss on constitutional speedy trial grounds is from the date of the mistrial, November 25, 2009, through the date the motion was denied on March 16, 2010." (footnote omitted)).

Accordingly, we hold the circuit court correctly determined that Barnes's speedy trial rights attached in his retrial on January 31, 2014, the date of remittitur.

### B.  Speedy Trial analysis

Length of delay

Both parties agree that the three-year and seven-month period between the date of remittitur and the date of Barnes's retrial is "presumptively prejudicial," triggering the speedy trial analysis. *See Hunsberger*, 418 S.C. at 342–43, 794 S.E.2d at 372 ("To trigger a speedy trial analysis, the accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from

'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness."); *see also State v. Waites*, 270 S.C. 104, 108, 240 S.E.2d 651, 653 (1978) (holding a delay of *two years and four months* was "sufficient to trigger our review of the other three factors").

Reason for the delay

Barnes argues the circuit court erred in attributing only two years and three months of the delay to the State. Barnes further asserts the circuit court erred in determining the State's interlocutory appeal[8] was a neutral reason for delay.

"Closely related to the length of the delay is the reason the State advances to justify the delay." *State v. Reaves*, 414 S.C. 118, 130, 777 S.E.2d 213, 219 (2015). "A deliberate effort by the State to delay the trial to injure the defense should be weighted heavily against it." *Id*. "Neutral reasons, such as overcrowded dockets or negligence, should be weighted less heavily; however, the State is still ultimately responsible for bringing a criminal defendant to trial." *Id*. "Delays caused by the defendant should weigh against him." *Id*. "[A] valid reason, such as a missing witness, justifies an appropriate delay." *Hunsberger*, 418 S.C. at 346, 794 S.E.2d at 374. In other words, "[t]he delay must be attributable to the State before [an] appellant[] can complain." *State v. Dukes*, 256 S.C. 218, 223, 182 S.E.2d 286, 288 (1971).

In determining the period of delay attributable to the State, the court made findings regarding several periods of time within the three-year and seven-month period between the date of remittitur and the date of Barnes's retrial. Based on these findings, the circuit court determined that two years and three months of the delay were attributable to the State and sixteen months were attributable to Barnes. Barnes challenges only two of the circuit court's findings on appeal.

First, Barnes argues the circuit court erred in attributing sixteen months of the delay to Barnes. We disagree.

The circuit court properly attributed this delay to Barnes. The State indicated that it was ready to proceed to trial prior to its interlocutory appeal regarding the

---

[8] While before the circuit court and throughout their appellate briefs, both parties refer to the State's common law petition for writ of certiorari in *Barnes II* as an "interlocutory appeal." For ease of discussion and to avoid confusion, we use the parties' phraseology in our discussion. *But see* note 4.

appointment of counsel in *Barnes II*. During the State's interlocutory appeal, one of Barnes's attorneys was placed under an order of protection. After the case was remitted on August 10, 2015, the order of protection continued until December 16, 2016. Therefore, despite being prepared for trial, the State could not proceed with Barnes's trial because Barnes chose to continue retention of counsel who he knew was subject to an order of protection. While we acknowledge that Barnes was entitled to retain counsel of his choice, this decision and the resulting delay cannot be properly attributed to the State. Consequently, the delay cannot be characterized as neutral and must be attributed to Barnes. *See Reaves*, 414 S.C. at 130, 777 S.E.2d at 219 ("Neutral reasons, *such as overcrowded dockets or negligence*, should be weighted less heavily; *however, the State is still ultimately responsible for bringing a criminal defendant to trial*." (emphases added)); *id*. ("Delays caused by the defendant should weigh against him.").

Second, Barnes argues the circuit court erred in finding that the State's interlocutory appeal was neutral and did not weigh heavily against the State. Barnes contends that the interlocutory appeal was an unjustified attempt to preclude Barnes from asserting his constitutional right to counsel. The State argues the circuit court properly determined the interlocutory appeal was a legitimate reason for delay. We agree with the State.

> [A]n interlocutory appeal by the [State] ordinarily is a valid reason that justifies delay. In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include the strength of the [State]'s position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime.

*United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *see also United States v. Jackson*, 508 F.2d 1001, 1005 (7th Cir. 1975) (finding that unless an interlocutory appeal was taken in bad faith or for the sole purpose of delay, "to put the onus of appellate delay on the [State] would severely infringe the [State]'s right to appeal").

The circuit court found that the State's interlocutory appeal was not taken in bad faith or for purpose of delay because (1) the supreme court granted the petition, (2) the supreme court heard the petition in its original jurisdiction, and (3) the supreme court held oral arguments on the case. Moreover, we note the supreme court affirmed the circuit court's ruling in favor of Barnes in a split decision. Consequently, we find the circuit court's determination that the interlocutory appeal was not taken in bad faith or for purpose of delay is not "clearly erroneous." *See*

*Baccus*, 367 S.C. at 48, 625 S.E.2d at 220 ("[Appellate courts are] bound by the [circuit] court's factual findings unless they are clearly erroneous."). Thus, the circuit court properly determined the State's interlocutory appeal was a neutral reason for delay.

Accordingly, the circuit court properly found that two years and three months of the delay were attributable to the State. Furthermore, the circuit court properly determined that the neutral delays should not be weighed heavily against the State. *See State v. Chapman*, 289 S.C. 42, 45, 344 S.E.2d 611, 613 (1986) ("The delay was not caused by any willful neglect on the [S]tate's part. The constitutional guarantee of a speedy trial affords protection only against unnecessary or unreasonable delay.").

Assertion of the right

Barnes argues that he first raised his speedy trial rights in the previous trial. The State argues Barnes first asserted his speedy trial rights on August 14, 2017, and this factor supports the conclusion that Barnes's speedy trial rights were not violated because his retrial occurred approximately two months after he asserted his speedy trial rights.[9] We agree with the State.

"The third factor—assertion of the right—recognizes that while a criminal defendant has no responsibility to bring himself to trial, the extent to which he exercises his right to a speedy trial is significant." *Reaves*, 414 S.C. at 130, 777 S.E.2d at 219. While a defendant's assertion of the right is not dispositive of whether he is entitled to relief, it is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Hunsberger*, 418 S.C. at 349, 794 S.E.2d at 375. "Accordingly, 'the defendant's failure to assert the right, although not conclusive, makes it more difficult to show that the right was violated.'" *Reaves*, 414 S.C. at 130, 777 S.E.2d at 219 (quoting *Pittman*, 373 S.C. at 550, 647 S.E.2d at 155). "This consideration prevents a criminal defendant from strategically acquiescing in a delay [that] works to his advantage, then asking the case be dismissed at the last moment once it is called for trial." *Id.*

---

[9] The State alternatively argues that Barnes never asserted his speedy trial rights because his motion to dismiss was not a proper invocation of the rights. We find this argument meritless. *See State v. Robinson*, 335 S.C. 620, 626, 518 S.E.2d 269, 272 (Ct. App. 1999) ("Robinson first asserted his right to a speedy trial in May 1995 *when he filed the formal motion to dismiss*." (emphasis added)).

As indicated in Section I(a), the circuit court properly determined that Barnes's speedy trial rights attached on January 31, 2014. Accordingly, the only time Barnes asserted his speedy trial rights after they attached was August 14, 2017, when he filed his motion to dismiss. Moreover, we note that Barnes, who was represented by counsel, waited approximately forty-two months before invoking his speedy trial rights. *See Waites*, 270 S.C. at 109, 240 S.E.2d at 653 ("We think it significant that Waites, represented by counsel, waited approximately twenty-eight months before claiming he had been denied his constitutional right to a speedy trial."). Additionally, Barnes's retrial was held approximately two months after he filed his motion to dismiss. *See Robinson*, 335 S.C. at 626, 518 S.E.2d at 272 (indicating the fact that Robinson was tried within one year of his first formal motion to dismiss contributed to the finding that his speedy trial rights were not violated). Consequently, this factor weighs against Barnes. *See Hunsberger*, 418 S.C. at 349, 794 S.E.2d at 375 ("The accused's assertion of the right . . . is entitled [to] *strong evidentiary weight in determining whether the accused is being deprived of the right*." (emphasis added)).

Prejudice

Barnes argues the circuit court erred in finding his speedy trial rights were not violated because he was prejudiced by the delay. The State argues the circuit court's finding is proper because Barnes cannot demonstrate any actual prejudice resulting from the delay. We agree with the State.

"The final factor—prejudice to the defendant—requires a reviewing court to analyze the three different types of prejudice the speedy trial right seeks to prevent: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility the defense will be impaired." *Reaves*, 414 S.C. at 131, 777 S.E.2d at 219. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Langford*, 400 S.C. at 445, 735 S.E.2d at 484 (quoting *Barker*, 407 U.S. at 532); *but see Loud Hawk*, 474 U.S. at 312 ("[T]he Speedy Trial Clause's core concern is impairment of liberty . . . .").

"[A]n accused can assert actual prejudice or presumptive prejudice as the result of the State's violation of his right to a speedy trial." *Hunsberger*, 418 S.C. at 351, 794 S.E.2d at 376. "Actual prejudice occurs when the trial delay has weakened the accused's ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Id*. "The United States Supreme Court also recognized that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." *Id*. "While presumptive prejudice cannot

alone support a speedy trial claim, it is part of the mix of relevant facts, and its importance increases with the length of time." *Id.*

At the outset, we note that Barnes does not identify any actual prejudice resulting from the applicable delay in his brief but relies solely on presumptive prejudice stemming from the length of delay between the arrest warrant and the retrial. *See id.* ("[P]resumptive prejudice cannot alone support a speedy trial claim . . . ."). Therefore, Barnes cannot demonstrate that he was prejudiced by the delay between the remittitur and the retrial. However, we will also review the findings of the circuit court.

The circuit court made the following findings regarding prejudice: (1) Barnes benefitted from the availability of prior witness testimony given under oath in his first trial; (2) Barnes benefitted from the availability of witness testimony given under oath in the trials of his co-defendants Alex[10] and Julio Hunsberger[11]; (3) Barnes did not identify any defense witnesses who could not be reached due to the State's delay; (4) Barnes did not testify in his prior trial so he was not prejudiced by the potential use of his own prior testimony; (5) Barnes suffered prejudice from being incarcerated and awaiting trial, and his incarceration for other offenses was immaterial to the fact that these prejudices attached; and (6) Barnes benefitted in part from the delay because the State revoked its notice of intent to seek the death penalty. Based on the foregoing, we find that any prejudice Barnes suffered as a result of the delay is minimal, especially in light of the fact that the State withdrew its notice of intent to seek the death penalty despite previously obtaining a capital conviction. *See Pittman*, 373 S.C. at 552–53, 647 S.E.2d at 157 (finding no violation of the appellant's right to a speedy trial in light of the quantity of evidence presented by the State and the fact that the appellant "received some benefits as a result of the delay"); *Cooper*, 386 S.C. at 218, 687 S.E.2d at 67 (noting the State's withdrawal of its notice to seek the death penalty "could be construed as a benefit to Cooper resulting from the delay").

Weighing the factors

Here, the circuit court properly found that the State was responsible for a two-year and three-month delay and that the neutral reasons for delay weighed minimally against the State. Additionally, the circuit court properly determined that Barnes asserted his speedy trial rights approximately two months before the retrial.

---

[10] *See Hunsberger*, 418 S.C. at 335, 794 S.E.2d at 368.

[11] *See State v. Hunsberger*, Op. No. 2016-MO-029 (S.C. Sup. Ct. filed October 12, 2016).

Furthermore, we find that Barnes can demonstrate only minimal prejudice resulting from the State's delay. Consequently, based on the totality of the circumstances, including the complexity of the case, we find that Barnes's speedy trial rights were not violated. *See Hunsberger*, 418 S.C. at 343, 794 S.E.2d at 372 (indicating that a speedy trial analysis must consider: "(1) [the] length of delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) whether the delay prejudiced the accused"); *Langford*, 400 S.C. at 445, 735 S.E.2d at 484 ("While we are cognizant of not minimizing the deleterious effects of lengthy pre-trial incarceration, the two-year delay in bringing this case to trial does not amount to a constitutional violation in the absence of any actual prejudice to Langford's case."); *State v. Kennedy*, 339 S.C. 243, 251, 528 S.E.2d 700, 704–05 (Ct. App. 2000) ("Given the complexity of the case, supplying the State with a legitimate reason for the delay, and the lack of prejudice to the defendant, we conclude the trial court properly denied Kennedy's motion to dismiss based on his assertion of a speedy trial violation."). Accordingly, the circuit court properly denied Barnes's motion to dismiss.

## II.    Interstate Agreement on Detainers Act

Barnes argues the circuit court erred in failing to dismiss his indictment under the IAD. We find that this issue is not preserved for appellate review. While before the circuit court, Barnes conceded that the supreme court disposed of this issue in *Barnes I. See TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) ("An issue conceded in [circuit] court may not be argued on appeal."). On appeal, Barnes concedes that the issue was disposed of in *Barnes I* but argues that the circuit court abused its discretion by refusing to reconsider his IAD claim because the record on appeal presented to the supreme court did not contain all of the documents relevant to the claim. However, Barnes does not cite any authority, and likely none exists, to support the proposition that the circuit court abuses its discretion by refusing to allow a defendant to relitigate an issue that has been finally determined by our supreme court.[12] *See State v. Jones*, 344 S.C. 48, 58–59, 543 S.E.2d 541, 546 (2001) (finding an issue is abandoned when an appellant

---

[12] Moreover, our supreme court's final determination of an issue is equally binding on this court. *See* S.C. Const. art V, § 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents."); *State v. Patrick*, 318 S.C. 352, 358, 457 S.E.2d 632, 636 (Ct. App. 1995) (finding when the Supreme Court rules on an appellant's IAD claim in a prior appeal, that ruling is binding on the Court of Appeals in subsequent appeals).

only raises conclusory arguments without citing authority).  Accordingly, Barnes has abandoned this issue on appeal.

## CONCLUSION

Based on the foregoing, Barnes's conviction is

**AFFIRMED.**

**LOCKEMY, C.J., and HEWITT, J., concur.**